**THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br>NEAR INTELLIGENCE, INC., et al.,[1] | Chapter 11 |
| Debtors. | Case No. 23-11962 (TMH) |
| DRIVETRAIN, LLC, as Plan Administrator and<br>Litigation Trustee of Near Intelligence, Inc. et al.,<br>Litigation Trust, | Adv. Pro. No. 25-52298 (TMH) |
| Plaintiff,<br>     v.<br>MOBILEFUSE, LLC, | |
| Defendant. | |

**REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS
<u>PLAINTIFF'S AMENDED COMPLAINT</u>**

**THE ROSNER LAW GROUP LLC**
Frederick B. Rosner (DE #3995)
824 N. Market Street, Suite 810
Wilmington, DE 19801
Telephone:  (302) 777-1111
rosner@teamrosner.com

**MEYER, SUOZZI, ENGLISH & KLEIN, P.C.**
Kevin Schlosser, Esq.
Robert F. Regan, Esq.
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, New York 11530-9194
(516) 741-6565
kschlosser@msek.com
rregan@msek.com

Dated:  February 3, 2026                    *Counsel to Defendant MobileFuse LLC*

---

[1]   The Debtors in these chapter 11 cases are Near Intelligence, Inc., Near Intelligence LLC, Near North America, Inc., and Near Intelligence Pte. Ltd.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ...................................................................................................................... 6

    I.     CHOICE OF LAW .................................................................................. 6

    II.    THE FAC FAILS TO ADEQUATELY ALLEGE CLAIMS FOR
          CONSTRUCTIVE FRAUDULENT CONVEYANCE ......................................... 11

         A.     THE TRUSTEE FAILS TO ADEQUATELY ALLEGE
                INSOLVENCY ............................................................................ 11

         B.     THE TRUSTEE FAILS TO ADEQUATELY ALLEGE THE
                ABSENCE OF REASONABLY EQUIVALENT VALUE ...................... 14

    III.   THE FAC FAILS TO ADEQUATELY ALLEGE CLAIMS FOR
          INTENTIONAL FRAUDULENT CONVEYANCE ........................................... 15

    IV.   THE PURPORTED FRAUDULENT CONVEYANCE CLAIMS  ARE
          TIME BARRED TO THE EXTENT THAT THEY ARE BASED ON
          ALLEGED TRANSFERS MADE PRIOR TO DECEMBER 8, 2021 ................. 16

    V.    THE FAC FAILS TO ADEQUATELY  ALLEGE CLAIMS PURSUANT
          TO 11 U.S.C. § 544(B)(1) ...................................................................... 17

    VI.   THE FAC FAILS TO STATE A CLAIM FOR EQUITABLE
          SUBORDINATION ................................................................................... 18

    VII.  THE TRUSTEE'S COMMON LAW CLAIMS ARE BARRED ......................... 18

CONCLUSION ................................................................................................................ 19

i

# TABLE OF AUTHORITIES

**CASES**

*In re AeroCision Parent, LLC*,
  667 B.R. 1 (Bankr. D. Del. 2025) ............................................................................ 18

*In re American Classic Voyages Co.*,
  367 B.R. 500 (Bankr.D.Del. 2007) .......................................................................... 13

*In re Aphton Corp.*,
  423 B.R. 76 (Bankr.D.Del. 2010) ............................................................................ 17

*Arunachalam v. IBM*,
  2021 U.S. Dist. LEXIS 247721 (D. Del. 2021) ....................................................... 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................................... 1, 2, 14

*Askanase v. Fatjo*,
  130 F.3d 657 (5th Cir. 1997) .................................................................................... 13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................. 1, 2, 12, 14

*Burtch v. Zachem (In re TZEW Holdco LLC)*,
  2023 WL 6140247 (Bankr.D.Del. 2023) ................................................................. 14

*Carson Optical Inc. v. eBay Inc.*,
  202 F.Supp.3d 247 (E.D.N.Y. 2016) ......................................................................... 4

*In re Century City Doctors Hosp.*, LLC,
  466 B.R. 1 (Bankr. C.D. Cal.2012) ...................................................................... 8, 18

*In re CLK Energy Partners, LLC*,
  2010 WL 1930065 (Bankr. W.D.La. 2010) ............................................................. 17

*In re Food Mgmt. Group, LLC*,
  380 B.R. 677 (Bankr. S.D.N.Y. 2008) ....................................................................... 6

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009) ....................................................................................... 1

*In re F-Squared Inv. Mgmt, LLC*,
  2019 WL 4261168 (Bankr.D.Del. 2019) ................................................................. 11

*IBT Media Inc. v. Pragad*,
   220 A.D.3d 530 (1st Dep't 2023) ........................................................................ 18

*King v. Baldino*,
   648 F. Supp. 2d 609 (D. Del. 2009) ..................................................................... 14

*Kirschner v. KPMG LLP*,
   15 N.Y.3d 446 (2010) ......................................................................................... 10

*In re Liberty State Benefits of Delaware, Inc.*,
   541 B.R. 219 (Bankr.D.Del. 2015) ...................................................................... 10

*In re Liquid Holdings Grp., Inc.*,
   2018 WL 2759301 (Bankr.D.Del. 2018) ......................................................... 10, 11

*In re Livent, Inc. Noteholders Securities Litigation*,
   151 F.Supp.2d 371 (S.D.N.Y. 2001) ..................................................................... 4

*In re Lyondell Chemical Company*,
   567 B.R. 55 (Bankr S.D.N.Y. 2017) .................................................................... 13

*In re Northwestern Corp.*,
   313 B.R. 595 (Bankr.D.Del. 2004) ........................................................................ 3

*Off. Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*,
   267 F.3d 340 (3d Cir. 2001) .............................................................................. 6, 7

*Oran v. Stafford*,
   226 F.3d 275 (3d Cir. 2000) .................................................................................. 2

*In re OSC 1 Liquidating Corporation*,
   529 B.R. 825 (Bankr.D.Del. 2015) ........................................................................ 8

*O'Toole v. Karnani (In re Trinsium Grp.)*,
   460 B.R. 379 (Bankr.S.D.N.Y. 2011) .................................................................. 11

*In re Pack Liquidating, LLC*,
   2025 WL 2587577 (Bankr.D.Del. 2025) ................................................... 11, 12, 16

*Shearson Lehman Hutton, Inc. v. Wagoner*,
   944 F.2d 114 (2d Cir. 1991) ..................................................................... 1, 6, 7, 19

*Simkin v. Blank*,
   19 N.Y.3d 46 (2012) ........................................................................................... 18

*The Limited, Inc. v. McCrory Corp.*,
   169 A.D.2d 605 (1st Dep't 1992) ......................................................................... 18

iii

*West Penn Allegheny Health Sys., Inc. v. UPMC*,
   627 F.3d 85 (3d Cir. 2010)...........................................................................1

*Wight v. BankAmerica Corp.*,
   219 F.3d 79 (2d Cir. 2000)............................................................................6

*In re Zohar III Corp.*,
   620 F.Supp.3d 147 (D. Del. 2022)..............................................................18

**STATUTES**

11 U.S.C. §544 ....................................................................................... 11, 17

11 U.S.C. §548 ....................................................................................... 11, 16

**RULES**

Fed. R. Civ. P. 9 ......................................................................................... 5, 16

**OTHER AUTHORITIES**

Restatement (Second) Conflict of Laws § 221 (Am. L. Inst. 1988). ................................. 8

**PRELIMINARY STATEMENT**[2]

Defendant MobileFuse LLC ("MobileFuse") respectfully submits this Reply Memorandum of Law in further support of its motion to dismiss the first Amended Complaint dated November 18, 2025 (the "FAC") [Adv. D.I. 24] filed by plaintiff Drivetrain, LLC, as Plan Administrator and Litigation Trustee ("Plaintiff" or the "Trustee"), appointed in the above-captioned Chapter 11 case of Near Intelligence, Inc., *et al.* (collectively "Near" or the "Debtor").  As set forth below, despite the Trustee's attempts in its opposition papers to spin the allegations in the FAC into purportedly cognizable claims, the Trustee has in fact failed to allege any valid or plausible claims against MobileFuse, and the FAC should be dismissed in its entirety.

As set forth in MobileFuse's initial motion papers, the *in pari delicto* doctrine and the *Wagoner* rule preclude claims asserted by the Trustee in the FAC.  The choice of law issues raised by the Trustee in opposition thereto are addressed below.  More fundamentally, however, the Trustee's attempt to spin the factual foundation of its allegations into cognizable claims against MobileFuse is entirely implausible on its face.  A plaintiff must allege well-pled facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The facial plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.  Instead, the plaintiff must plead factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678.  Courts will reject internally inconsistent or contradictory

---

[2] The facts set forth herein are taken from allegations in the FAC and documents that are referenced in and integral to the FAC.  *See West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 n.6 (3d Cir. 2010) *cert denied* 132 U.S. 98 (2011) (on a motion to dismiss, court may consider documents that are "*integral to or explicitly relied upon in the complaint*"). Copies of relevant agreements, along with a copy of the FAC, are attached as Exhibits to the accompanying Attorney Declaration of Robert F. Regan dated December 16, 2025 ("Regan Decl.").

factual allegations within the same claim that render the claim implausible. As the Court in *Iqbal* emphasized, "[d]etermining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. A claim that is not logical, sensical, or realistic will generally fail this test and be subject to dismissal. This plausibility standard serves the practical purposes of preventing a plaintiff from pursuing "largely groundless claims." *Twombly*, 550 U.S. at 558. In the present case, because the entire premise of the Trustee's claims makes no logical sense, common sense dictates that the Trustee's claims are not plausible on their face and, therefore, should be dismissed.

Clearly, the allegations in the FAC are not consistent with the theory that the Trustee seeks to spin as the foundation for its claims against MobileFuse. As alleged in the FAC, the agreements between Near and MobileFuse were part of a fraudulent "round-tripping" scheme orchestrated by Near whereby Near made substantial payments to MobileFuse–as determined by the Near Insiders–and then MobileFuse made even larger payments to Near–again as determined by the Near Insiders—all in order to exaggerate Near's revenue and make Near a more attractive SPAC target. Indeed, the alleged transactions resulted in a ***net payment from MobileFuse to Near*** in the amount of $5.83 Million (FAC, ¶ 58), and thus an overall benefit to Near, and, significantly, a substantial financial infusion to Near through a SPAC.[3]

Now, in an attempt to manufacture claims against MobileFuse, Near wants the Court to ignore Near's role in the alleged fraudulent round-tripping scheme, pursuant to which Near

---

[3] As a matter of public record, the Department of Justice obtained an indictment in the Southern District of New York precisely on that basis, specifically alleging that the Near Insiders fraudulently inflated Near's revenue to make Near a more attractive SPAC target. *See* indictment in *U.S. v. Mathews, et al.*, SI 24 Cr. 630 (SDNY) ("Indictment"), available here: https://www.justice.gov/usao-sdny/media/1410506/dl?inline. Courts are permitted to take judicial notice of public records on a motion to dismiss. *See, e.g., Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000).

received millions of dollars in payments from MobileFuse, and deem those payments as purportedly legitimate, while simultaneously finding all payments by Near to MobileFuse pursuant to the same alleged round-tripping scheme to be entirely illegitimate, requiring them to be returned by MobileFuse to Near.  The Trustee's attempt to carve out and split up the alleged "round-tripping" scheme fails for numerous reasons. First, it is well settled that an agreement entered into in furtherance of a fraudulent scheme is void and unenforceable.  *See, e.g.*, *In re Northwestern Corp.*, 313 B.R. 595, 603 (Bankr.D.Del. 2004) (transaction undertaken as part of a fraudulent scheme would be void and unenforceable).  Thus, based on the Trustee's allegations in the FAC, both the Near Usage Agreements and the MobileFuse Services Agreement are void and unenforceable, requiring dismissal of the claims in the FAC.

In addition, the internal inconsistency of the core premise of the Trustee's claims – *i.e.*, that one half of the alleged fraudulent round-tripping scheme is enforceable (specifically, any payments MobileFuse made to Near) while the other half (payments MobileFuse received from Near) is not – completely undermines the plausibility of the Trustee's claims.  In an attempt to support this fatally flawed premise, the Trustee relies on conclusory and often contradictory or inconsistent allegations that, while not included in the original Complaint, were added to the FAC in a futile attempt to escape dismissal.[4]  While a plaintiff may be permitted to plead alternative theories of liability as part of separate claims, where, as here, the plaintiff's claim is "internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding the motion to dismiss." *Carson Optical Inc. v. eBay Inc.*, 202

---

[4] For example, the Trustee relies heavily on its self-serving, conclusory and contradictory allegation at paragraph 47 of the FAC that "MobileFuse's transfers to Near were not repayment of the Sham Payments."  Thus, while the Trustee alleges that the Near Insiders orchestrated a fraudulent "round-tripping" payment scheme as part of their effort to become a more attractive SPAC target, the Trustee then seeks to avoid the natural consequences of the alleged roundtripping scheme.  *See* FAC, ¶¶ 1, 24.

F.Supp.3d 247, 255 (E.D.N.Y. 2016). *See also In re Livent, Inc. Noteholders Securities Litigation*, 151 F.Supp.2d 371, 407 (S.D.N.Y. 2001)(while Rule 8(d)(2) allows "separate claims" which are permitted "regardless of consistency," it does not grant plaintiffs license to plead inconsistent assertions of facts within a single unitary claim). Such internal inconsistency renders the Trustee's claims implausible on their face and warrants dismissal.

Further, while alleging the existence of a fraudulent round-tripping scheme that clearly had the benefit of exaggerating Near's financial position for the purpose of achieving a SPAC, the Trustee now seeks to make the inconsistent argument that the Near Insiders orchestrated the alleged scheme to get some benefit out of a 10% interest in MobileFuse (that they ultimately relinquished). In other words, it appears that the "gist" of the Trustee's argument is that the Near Insiders paid $2 Million of their own funds in order to acquire a non-controlling, 10% interest in MobileFuse and then allegedly had Near transfer over $25 Million in alleged payments to MobileFuse pursuant to the Services Agreement in order to get the benefit of a single $303,927.70 member distribution from MobileFuse, before relinquishing their ownership interest in MobileFuse altogether in 2023.

The Trustee's purported claims make no logical sense in the context of these allegations and simply fail to state "plausible" claims. Indeed, it makes no sense to suggest that the Near Insiders would pay $2 Million of their own money to acquire a 10% interest in MobileFuse and then gratuitously transfer $25 Million from their own company (Near) to a company in which they held a de minimis interest (MobileFuse) in order to receive a one-time member distribution of $303,927.70 from MobileFuse, only to then relinquish their ownership interest in MobileFuse altogether. This is not "plausible on its face." Further, because the Near Insiders had relinquished their ownership interest in MobileFuse by at least July 2023 (FAC, ¶ 59), many of the challenged

transactions, including the alleged "Dues Settlement Agreement," occurred at a time when the Near Insiders had no ownership interest in MobileFuse and thus no implied conflict. All of the Trustee's claims are based on these same implausible propositions, along with the Trustee's disingenuous attempt to carve up the alleged "round-tripping" scheme into two internally inconsistent halves. Under these circumstances, the Trustee's allegations do not state a plausible claim on their face and clearly do not satisfy the general pleading requirements under Rule 8 or the heightened pleading requirements under Rule 9. As a result, the FAC fails to set forth any valid and plausible claims against MobileFuse, and each of the claims should be dismissed.

In addition to its general failure to state a claim that is plausible on its face, the Trustee has failed to adequately allege multiple elements of its purported claims. For example, the Trustee's purported avoidance claims based on constructive fraudulent transfers (Counts I, II, VII and VIII) must fail because the FAC does not adequately allege that the challenged transfers were for less than reasonably equivalent value or the insolvency of the *actual transferor* on the date of the challenged transfer. Instead, the Trustee simply alleges in conclusory fashion that "Near" received less than "reasonably equivalent value" and was insolvent at the time of the alleged transfers. Mere recitations of the elements of a claim, however, are insufficient to survive a motion to dismiss.

The purported avoidance claims based on alleged intentional fraudulent transfers (Counts III, IV and VI and VIII) also fail because the FAC does not plausibly allege intentional fraud with the particularity required under Fed. R. Civ. P. 9(b). To plausibly assert intentional fraudulent conveyance claims, the Trustee must allege particularized facts establishing the requisite fraudulent intent. The FAC in this case fails to meet this heightened pleading requirement.

Because the underlying claims for constructive and intentional fraudulent transfers are legally insufficient, the Trustee's claims to recover allegedly avoidable transfers (Counts V, VI and

5

VII and VIII) must also fail.  Likewise, because the FAC does not allege plausible facts sufficient to support the Trustee's claims for equitable subordination and to disallow MobileFuse's unsecured claim (Counts XII and XIII), those claims must also fail.  Other than conclusory allegations of the elements of the legal claims, the FAC does not allege facts sufficient to establish a plausible claim for equitable subordination.

Accordingly, the FAC should be dismissed in its entirety.

## ARGUMENT

### I.  CHOICE OF LAW

As set forth in the initial motion papers, under the doctrine of *in pari delicto*, a plaintiff may not assert claims against a defendant if the plaintiff bears fault for the claims.  *See Off. Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 354 (3d Cir. 2001) (claims on behalf of debtor properly dismissed based on *in pari delicto* doctrine where debtor participated in alleged Ponzi scheme).  The *in pari delicto* doctrine bars trustees from suing third parties based on a debtor corporation's "own wrongful conduct."  *In re Food Mgmt. Group, LLC*, 380 B.R. 677, 693 (Bankr. S.D.N.Y. 2008).  Similarly, under the "*Wagoner* rule" established by the Second Circuit, the *in pari delicto* doctrine bars a bankruptcy trustee, as a matter of prudential standing, from suing third parties for damages "when a bankrupt corporation has joined with [the] third party in defrauding its creditors*." Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991).  "Because management's misconduct is imputed to the corporation, and because a trustee stands in the shoes of the corporation, the *Wagoner* rule bars a trustee from suing to recover for a wrong that he himself essentially took part in."  *Wight v. BankAmerica Corp.*, 219 F.3d 79, 86-87 (2d Cir. 2000).

In this case, because the Trustee stands in the shoes of the Debtor and the allegations in the FAC establish that the Debtor (through the Near Insiders) orchestrated and implemented the

6

alleged wrongful conduct that is the basis of the Trustee's claims, the Trustee is now barred by the doctrine of *in pari delicto* and the *Wagoner* rule from asserting its purported claims against MobileFuse, including specifically the Trustee's purported claims for breach of contract (Counts IX and X) and unjust enrichment (Count XI).

While the Trustee attempts to discredit the *Wagoner* rule, it completely ignores the fact that the Second Circuit's decision in *Wagoner* was cited with approval by the Third Circuit. *See R.F. Lafferty*, 267 F.3d at 356, 358 (trustee "stands in the shoes of the debtor" and is subject to the same defenses that defendant could have asserted against debtor), *citing Wagoner*, 944 F.2d at 120. Furthermore, as the Trustee concedes in its opposition, in light of the choice of law provision in the parties' Services Agreement, which provides for the application of New York law and requires claims to be brought in an appropriate court in either New York County or the Southern District of New York, New York law applies at least to the claims arising out of the Services Agreement. The Court should honor the parties' agreement with respect to both choice of law and venue by applying the *Wagoner* rule. Even without the *Wagoner* rule, however, the Trustee's claims are still barred under the *in pari delicto* doctrine.

The Trustee essentially argues in its opposition that its common law claims are not barred by the *in pari delicto* doctrine because New Jersey or California law – rather than New York law – would apply to those claims. As set forth below, however, because New York law applies, there is no merit to the Trustee's arguments and its claims are in fact barred by the *in pari delicto* doctrine for the reasons stated in MobileFuse's original motion papers.

The Trustee concedes, as it must, that New York Law applies to all claims arising out of the 2020 Services Agreement between MobileFuse and Near, including the Trustee's statutory claims, based on the choice of law provision in the Services Agreement. *See* Trustee's Opposition,

7

at p. 8; *In re OSC 1 Liquidating Corporation*, 529 B.R. 825, 831 (Bankr.D.Del. 2015) (Delaware courts "are bound to respect the chosen law of contracting parties, so long as that law has a material relationship to the transaction"). For the same reasons, New York law would also apply to the Trustee's unjust enrichment claim because that claim is primarily based on the 2020 Services Agreement. Where an unjust enrichment or restitution claim arises from a contractual relationship, the parties' contractual choice of law provisions applies. *See In re Century City Doctors Hosp.*, LLC, 466 B.R. 1, 17 n.46 (Bankr. C.D. Cal., 2012), quoting the Restatement (Second) Conflict of Laws §221, cmt. d (Am. L. Inst. 1988) ("'The applicable law will be that chosen by the parties if they have made an effective choice under the circumstances . . . . '").

The Trustee also takes the position that, although Near was located in Singapore when the parties initiated their contractual relationship and despite any choice of law provisions to the contrary, the law of Singapore would not apply because this matter does not have a substantial relationship to Singapore. Nevertheless, the Trustee attempts to argue that the law of New Jersey or California should apply to the Trustee's common law claims because at some point after first entering into a contractual relationship, Near allegedly relocated to California and MobileFuse allegedly used a P.O. Box in New Jersey as its mailing address.[5] Clearly, neither of the parties anticipated that New Jersey or California law would apply, and there is no merit to this position, which is not supported by the relevant documentary evidence or the allegations in the FAC. Instead, under the circumstances in this case, New York law would apply.

As previously indicated, the relevant agreements governing the payment for services provided by MobileFuse to Near both contain express choice of law provisions that provide for

---

[5] The primary basis for the Trustee's argument that New Jersey law should apply appears to be that a P.O. Box in New Jersey was listed as MobileFuse's mailing address in the 2023 Usage Agreement between Near and MobileFuse.

the application of New York law to all disputes arising from or related to those agreements and provide for exclusive jurisdiction in an appropriate state or federal court located in New York County or the Southern District of New York. *See* Regan Aff., Ex. B (Services Agreement, §10.3) and Ex. C (Real Time Bidding Buyer Agreement, §16). Thus, at the outset of their relationship, both Near and MobileFuse expressly agreed that New York law applies to any disputes arising out of the provision of services by MobileFuse to Near, and that the exclusive jurisdiction for the resolution of all such disputes would be in the state or federal courts located within the Southern District of New York. As such, New York substantive law and the Second Circuit's analysis of the substantive and procedural law should play a direct, guiding role in deciding this motion.

Furthermore, as established by both the 2020 Services Agreement and the 2020 Usage Agreement, when Near and MobileFuse first entered into a contractual relationship in 2020, Near was located in Singapore and MobileFuse was located in New York. *See* FAC, Exhibit A (2020 Usage Agreement); December 8, 2025 Regan Aff., Exhibit B (2020 Services Agreement). Those business addresses remained the same at least until 2022, when the parties entered into the 2022 Usage Agreement. *See* FAC, Exhibit B (2022 Usage Agreement). Thus, the relevant documents confirm that MobileFuse was domiciled in New York at the time of the 2020 Services Agreement, the 2020 Usage Agreement and the 2022 Usage Agreement. Clearly, the allegation that sometime in 2023 – when the relationship between Near and MobileFuse was coming to an end – MobileFuse allegedly moved to New Jersey because it used a New Jersey P.O. Box as its mailing address would have little or no impact on the choice of law analysis.

In addition, as spelled out in the Indictment in the Southern District of New York, at all relevant times "MobileFuse, LLC was a privately held mobile advertising company that facilitated customer advertisements on mobile applications and was based in New York, New York."

9

Indictment, ¶7.  Further, "[t]he Near-MobileFuse relationship began in or around late 2019, when executives of both companies met in New York, New York."  Indictment, ¶18.  As detailed in the Indictment, Near conducted numerous financial transactions through its bank in New York, and retained and regularly communicated with an outside auditing firm in New York concerning relevant transactions.  Indictment, ¶¶ 33, 37.  Based on these significant contacts, it is clear why the parties agreed, at the outset of their relationship, to the application of New York law.  Those significant contacts also militate in favor of the application of New York law to the Trustee's common law claims for breach of contract and unjust enrichment.  Clearly, based on their agreements, the parties never contemplated that New Jersey or California law would apply.

Based on the foregoing, all of the Trustee's arguments based on New Jersey and/or California law must be rejected, including with respect to the *in pari delicto* doctrine.  Instead, under New York law, the alleged wrongful conduct of the Near Insiders is imputed to Near for purposes of the *in pari delicto* defense (*see, e.g., Kirschner v. KPMG LLP*, 15 N.Y.3d 446 (2010)), and the adverse interest exception, which does not apply where the debtor "receives any sort of benefit from the fraud, no matter how small that benefit might be," would not apply in this case. *See In re Liberty State Benefits of Delaware, Inc.*, 541 B.R. 219, 235 (Bankr.D.Del. 2015).  *See also In re Liquid Holdings Grp., Inc.*, 2018 WL 2759301, *16 (Bankr.D.Del. 2018) (dismissing trustee's claims based on *in pari delicto* doctrine, and rejecting adverse interest exception where debtor corporation received benefit of initial public offering (IPO) as a result of insiders' alleged fraudulent conduct and debtor's inflated revenue).  As a result, as fully detailed in MobileFuse's initial motion papers, the Trustee's claims against MobileFuse, including specifically its claims for breach of contract and unjust enrichment, are barred by the *in pari delicto* doctrine.

II.     **THE FAC FAILS TO ADEQUATELY ALLEGE CLAIMS FOR CONSTRUCTIVE FRAUDULENT CONVEYANCE**

As set forth in MobileFuse's initial motion papers, the FAC also fails to plausibly allege facts sufficient to establish the required elements of claims under 11 U.S.C. §§ 548(a)(1)(B) or 544(b)(1) for constructive fraudulent conveyance (Counts I, II, VII and VIII).  Because the Trustee has failed to adequately allege that Near received less than reasonably equivalent value or that the transfers were made at a time when the actual transferor of the challenged transfer was insolvent or rendered insolvent thereby, the Trustee's purported constructive fraudulent conveyance claims must be dismissed.

### A.  The Trustee Fails to Adequately Allege Insolvency

In order to state a claim for a constructive fraudulent transfer pursuant to Section 548(a)(1)(B), the Trustee must allege facts with particularity from which the Court can reasonably infer that the transferor of the challenged transfers was insolvent on the date of the alleged transfer or became insolvent as a result thereof.  *See In re F-Squared Inv. Mgmt, LLC*, 2019 WL 4261168, *11 (Bankr.D.Del. 2019).  "'[T]here must be some sort of financial data or analysis provided so that the court can infer the company's liabilities exceeded its assets at the time the transfers in question took place.'" *Liquid Holdings Group, Inc.,* 2018 WL 2759301 at *19, *quoting O'Toole v. Karnani (In re Trinsium Grp.)*, 460 B.R. 379, 392 (Bankr.S.D.N.Y. 2011).  "'Mere recitations by a trustee that a debtor is insolvent are conclusory,' and are therefore insufficient to survive a motion to dismiss." *In re: Pack Liquidating, LLC*, 2025 WL 2587577, *7 (Bankr.D.Del. 2025).  In the present case, the Trustee has failed to adequately allege insolvency.

Contrary to the Trustee's contention, the allegations in the FAC are entirely insufficient to allow the Court to infer that the actual transferors of the challenged transfers were insolvent on the date of each of the alleged transfers.  First, as the Trustee concedes, the allegations in the FAC

11

lump all of the individual Debtors together into a single defined term – "Near" – which consists of the following *four* entities: Near Intelligence, Inc.; Near Intelligence LLC; Near North America, Inc. and Near Intelligence Pte. Ltd. *See* FAC, at p. 1 and fn. 1, ¶¶ 71 *et seq*. Thus, based on the allegations in the FAC, the Trustee has not alleged facts sufficient to ascertain the financial condition of any of the individual named debtors. The Trustee simply ignores this fatal defect in its opposition to this motion.

The alleged transferors (as opposed to the named debtors) consist of the following, different set of *three* entities: Near Pte. Ltd.; Near Intelligence Holdings Inc.; and Near Intelligence Pte. Ltd. *See* FAC, ¶ 42.[6] Based on the allegations in the FAC, it is also impossible for the Court to infer that any of the actual transferors of the alleged transfers was actually insolvent on the date of the alleged transfer or as a result thereof. The "one-size fits all" group pleading tactic in the FAC may be convenient for the Trustee, but it ultimately fails to meet the fundamental federal pleading requirements: to allege sufficiently particularized facts that provide "fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

Here, the Trustee alleges, in conclusory fashion, that "Near" collectively as an enterprise – rather than the specific alleged transferors – was "insolvent" and "did not have the ability to pay its debts as they became due and was inadequately capitalized." *See* FAC, ¶¶ 71, *et seq*. Any specific financial numbers alleged in the FAC refer to "Near" collectively as a "total enterprise," rather than any particular transferor. Such "conclusory assertions of insolvency . . . . ought to be disregarded." *In re: Pack Liquidating, LLC*, 2025 WL 2587577 at *7 (Bankr.D.Del. 2025). Indeed, the allegations in the FAC indicating that Near was able to raise millions of dollars in

---

[6] The Trustee further confuses the situation by arguing in its opposition that the challenged transfers were made by Near Singapore, Near Inc., Near Pte. and Near Holdco, when in fact the FAC alleges that the challenged transfers were made by Near Pte. Ltd.; Near Intelligence Holdings Inc.; and Near Intelligence Pte. Ltd. *See* FAC, ¶ 42.

equity financing pursuant to the SPAC transaction in 2023 "counsels strongly against any reading of the complaint that would suggest that the company was insolvent at that time." *Id*. at *7.

In order to plausibly assert a claim for a constructive fraudulent transfer the Trustee actually must identify the specific transferor/debtor that was insolvent on the date of the alleged transfer or that became insolvent as a result thereof. *See In re American Classic Voyages Co.*, 367 B.R. 500, 503 n.5 (Bankr.D.Del. 2007)(it is the insolvency of the specific debtor that made the transfer that is relevant to the solvency analysis); *Askanase v. Fatjo*, 130 F.3d 657, 670 (5th Cir. 1997)(rejecting trustee's argument that solvency of parent corporation determined solvency of subsidiaries). Furthermore, because the bankruptcy code employs a balance sheet test, rather than a profit-and-loss test, the Trustee's allegations concerning the alleged cash flow or operating losses of "Near" collectively as an enterprise are not sufficient to satisfy the insolvency requirement. *See In re Lyondell Chemical Company*, 567 B.R. 55 (Bankr. S.D.N.Y. 2017)("neither cash flow nor the ability to pay current obligations is a factor in determining insolvency" under the balance sheet test). Based on the allegations in the FAC, which lump all of the debtors together into a single defined term (*i.e.*, "Near"), the Court again cannot reasonably infer that any of the actual transferors were insolvent (*i.e.*, the sum of the transferor's debts exceeded all of that entity's assets) on the date of the challenged transfers or as a result thereof.

Because the financial allegations in the FAC lump all of the named *debtors* together and fail to set forth the financial condition of each of the actual transferors of the challenged transfers, it is impossible to discern (and the Trustee has failed to allege) the financial condition of any of the actual transferors. As a result, the Court cannot reasonably infer that the actual transferors were insolvent on the date of the alleged transfers. *See, e.g.*, *Arunachalam v. IBM*, 2021 U.S. Dist. LEXIS 247721 (D. Del. 2021) (where "it is impossible to discern which Defendants allegedly did

what, where or when" and the complaint "fails to link claims to specific defendants" or "constitutes impermissible group pleading," the complaint must be dismissed); *Burtch v. Zachem (In re TZEW Holdco LLC)*, 2023 WL 6140247, *9 (Bankr.D.Del. 2023)("I cannot parse out which particular actions or inactions each individual Defendant purportedly committed, when such action or inaction occurred, and in respect of which Debtor. The Trustee simply asserts claims collectively against Defendants and fails to specify the actual involvement of any Defendant individually. The Complaint requires far more specificity.")(citations omitted); *King v. Baldino*, 648 F.Supp.2d 609, 623 (D. Del. 2009)("A significant problem with plaintiff's complaint is the failure to identify which individual director defendants breached his or her fiduciary duties, and when those duties were breached.").

This lumping of all of the named debtors together constitutes "impermissible group pleading" and warrants dismissal of the Trustee's constructive fraudulent conveyance claims. Such collective pleading fails to satisfy the particularized pleading requirements under *Twombly* and *Iqbal*, which require far more specificity.

In the present case, because the Trustee's allegations regarding solvency are largely conclusory and are not specific as to any of the actual transferors of the challenged transfers, it is impossible for the Court to reasonably infer that any of the actual transferors of the challenged transfers was insolvent on the date of the alleged transfer or became insolvent as a result thereof. As a result, the Trustee failed to satisfy the federal pleading requirements under *Iqbal* and *Twombly* and each of the constructive fraudulent conveyance claims should be dismissed.

### B. The Trustee Fails to Adequately Allege the Absence of Reasonably Equivalent Value

The FAC also fails to plausibly allege that the Debtor did not receive reasonably equivalent value. Instead, the Trustee merely alleges in conclusory fashion that Near failed to receive

reasonably equivalent value in exchange for its alleged payments to MobileFuse. Under the "round-tripping" scheme alleged in the FAC, however, Near made substantial payments to MobileFuse, and MobileFuse immediately turned around and made or "round-tripped" even greater payments to Near, resulting in a net payment or "net margin" to Near. *See* FAC, ¶ 39. According to the FAC, these transactions resulted in a net payment from MobileFuse to Near in the amount of $5.83 Million. FAC, ¶ 58. Thus, the purported "payment scheme" alleged by the Trustee resulted in a net benefit to Near (the Debtor), supporting the conclusion that Near received fair consideration. As a result, the FAC fails to plausibly allege that Near received less than reasonably equivalent value.

Accordingly, the Trustee failed to allege specific facts sufficient to establish plausible claims for constructive fraudulent transfers, and Counts I, II, V, VII and VIII should be dismissed.

## III.   THE FAC FAILS TO ADEQUATELY ALLEGE CLAIMS FOR INTENTIONAL FRAUDULENT CONVEYANCE

In response to the motion to dismiss the original Complaint, the Trustee now tries to assert claims for intentional fraudulent transfers. *See* FAC, Counts III, IV, VI and VIII. As set forth below, those claims should be dismissed because the Trustee fails to allege facts with sufficient particularity to plausibly establish the requisite fraudulent intent on the part of the debtor.

As detailed in MobileFuse's initial motion papers, the Trustee merely alleges in conclusory fashion that the challenged transfers were made "with the actual intent to hinder, delay, or defraud their present and future creditors." *See, e.g.,* FAC, ¶ 92, 97, 103. In an attempt to allege fraud, the Trustee essentially alleges that the Near Insiders paid $2 Million of their own funds in order to acquire a non-controlling 10% interest in MobileFuse and, thereafter, allegedly transferred over $25 Million in alleged payments from Near to MobileFuse in order to get the benefit of a single $303,927.70 member distribution from MobileFuse, before relinquishing their ownership interest

in MobileFuse.  At the same time, the Near Insiders allegedly caused MobileFuse to make even greater payments to Near, resulting in a net payment *from* MobileFuse *to* Near in the amount of $5.83 Million (FAC, ¶ 58) and, thus, a net benefit to Near.  As set forth above, however, these allegations make no logical sense and simply fail to state a "plausible" claim for fraud with the particularity required under the heightened pleading requirements of Fed. R. Civ. P. 9(b).

Finally, the issue with respect to an intentional fraudulent transfer claim is whether the *debtor* had the requisite fraudulent intent.  The Trustee, however, does not allege with particularly that any of the relevant transferors–*i.e.*, the specific entity that allegedly made each of the challenged transfers set forth in Table 1 at ¶ 42 of the FAC–had the requisite fraudulent intent. *See, e.g., In re: Pack Liquidating, LLC*, 2025 WL 2587577 at *7 ("[T]he complaint makes no allegation about any specific communication, board deliberations, or factual circumstances that would support an inference of fraudulent intent.  Such conclusory allegations do not meet the heightened pleading requirement that fraud be pled with particularity.").

Because the Trustee has not plausibly alleged—with particularity—that each of the specific transferors of the challenged transfers acted with the requisite fraudulent intent to hinder, delay or defraud any creditors—and, therefore, failed meet the heightened pleading requirements under Fed. R. Civ. P. 9(b)—each  of the Trustee's purported claims for intentional fraudulent transfers must be dismissed.

**IV.     THE PURPORTED FRAUDULENT CONVEYANCE CLAIMS
ARE TIME BARRED TO THE EXTENT THAT THEY ARE BASED
<u>ON ALLEGED TRANSFERS MADE PRIOR TO DECEMBER 8, 2021</u>**

As set forth in MobileFuse's initial motion papers, to the extent that the Trustee's fraudulent transfer claims are based on alleged transfers prior to December 8, 2021, those claims are barred by the two-year limitations period set forth in Section 548(a)(1). *See* FAC, ¶ 42, Table

1 (indicating that $7,644,409 in alleged transfers occurred prior to December 8, 2021). Accordingly, the Trustee's purported fraudulent transfer claims should be dismissed to the extent they are based on alleged transfers that were made prior to December 8, 2021.

## V.    THE FAC FAILS TO ADEQUATELY ALLEGE CLAIMS PURSUANT TO 11 U.S.C. § 544(B)(1)

As set forth above, because the Trustee has failed to adequately allege intentional or constructive fraudulent transfer claims, the Trustee's purported fraudulent transfer claims pursuant to 11 U.S.C. §544(b)(1) should also be dismissed. Those claims should also be dismissed for the additional reason that they are not based on the appropriate and applicable state law. The Trustee essentially concedes this point by citing to Delaware law in its §544(b)(1) claims, but then acknowledging in its opposition papers that New York law would apply to its statutory claims.

The elements of a fraudulent transfer claim under §544(b)(1) include: (1) a transfer made by the debtor, (2) without receiving reasonably equivalent value, (3) causing insolvency or financial harm to the debtor, and (4) applicable state law providing the basis for avoidance. Such claims are subject to dismissal where the Trustee fails to identify the applicable state law that serves as the basis for the claim. *See In re CLK Energy Partners, LLC,* 2010 WL 1930065, *4 (Bankr.W.D.La. 2010) (dismissing fraudulent transfer claim for failure to identify non-bankruptcy law upon which §544(b) claim was based); *In re Aphton Corp.,* 423 B.R. 76, 87-88 (Bankr.D.Del. 2010) (dismissing fraudulent transfer claim referring only generally to the UFTA).

As indicated above, any disputes arising out of the contracts for services provided by MobileFuse to Near are governed by New York law. Nevertheless, the Trustee cites to provisions of Delaware law, rather than the applicable New York law, in support of its purported §544(b)(1) claims. Accordingly, the Trustee has failed to identify the appropriate and applicable state law, and its §544(b)(1) claims should therefore be dismissed.

17

**VI.   THE FAC FAILS TO STATE A CLAIM
FOR EQUITABLE SUBORDINATION**

As set forth in MobileFuse's initial motion papers, the FAC also fails to plausibly allege claims for equitable subordination.  Pursuant to Counts XII and XIII of the FAC, the Trustee seeks to object to and equitably subordinate MobileFuse's nonpriority scheduled claim in the Near bankruptcy based on MobileFuse's alleged conduct in the remainder of its claims.  Because the FAC fails to allege facts sufficient to support a reasonable inference that MobileFuse engaged in inequitable conduct with respect to Near, the Trustee's equitable subordination claims must be dismissed. *See In re Zohar III Corp.*, 620 F.Supp.3d 147, 152 (D. Del. 2022) *appeal dismissed* 2022 WL 19038638 (3rd Cir. 2022) (there must be plausible allegations of "unfair conduct").

**VII.   THE TRUSTEE'S COMMON LAW CLAIMS ARE BARRED**

As set forth above, the Trustee's common law claims are barred by the *in pari delicto* doctrine. Furthermore, as set forth in MobileFuse's initial motion papers, the Trustee's claim for unjust enrichment should also be dismissed because the parties' relationship is governed by written agreements.  It is well settled that, where parties' relationship is governed by a written contract, recovery on a theory of unjust enrichment for events arising out of that contract are ordinarily precluded.  *See Simkin v. Blank*, 19 N.Y.3d 46, 55 (2012); *IBT Media Inc. v. Pragad*, 220 A.D.3d 530, 532 (1st Dep't 2023) (claims for unjust enrichment are properly dismissed where relationship between parties is governed by written agreement).  *See also The Limited, Inc. v. McCrory Corp.*, 169 A.D.2d 605, 607 (1st Dep't 1992) (unjust enrichment claim cannot stand where subject matter of claim is governed by contract).  *See also In re AeroCision Parent, LLC*, 667 B.R. 1 (Bankr.D.Del. 2025) (unjust enrichment claims are precluded when valid contracts govern the same subject matter); *In re Century City Doctors Hosp., LLC*, 466 B.R. at 18 ("Unjust enrichment is an equitable rather than a legal claim; consequently, no action for unjust enrichment lies where

18

a contract governs the parties' relationship to each other.") (citations and internal quotation marks omitted).  Thus, all of the Trustee's common law claims must be dismissed.

## CONCLUSION

As set forth above, because the FAC expressly alleges that the Debtor perpetrated the alleged wrongful conduct, the Trustee is barred under the *in pari delicto* doctrine and the *Wagoner* rule from asserting its purported claims against MobileFuse.  Furthermore, because the Trustee has failed to allege facts sufficient to establish any valid or facially plausible claim against MobileFuse, each of the claims asserted against MobileFuse is independently subject to dismissal.  Accordingly, the FAC should be dismissed in its entirety.

Dated:  February 3, 2026                                   **THE ROSNER LAW GROUP LLC**

*/s/ Frederick B. Rosner*
Frederick B. Rosner (DE #3995)
824 Market Street, Suite 810
Wilmington, Delaware 19801
Telephone:  (302) 777-1111
rosner@teamrosner.com


**MEYER, SUOZZI, ENGLISH & KLEIN, P.C.**
Kevin Schlosser, Esq.
Robert F. Regan, Esq.
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, New York 11530-9194
(516) 741-6565
kschlosser@msek.com
rregan@msek.com
*Counsel to the Defendant MobileFuse, LLC*

19