**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br>NEAR INTELLIGENCE, INC., et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 23-11962 (TMH) |
| DRIVETRAIN, LLC, as Plan Administrator and Litigation Trustee of Near Intelligence, Inc. et al., Litigation Trust,<br><br>Plaintiff,<br>v.<br>MOBILEFUSE, LLC,<br><br>Defendant. | Adv. Pro. No. 25-52298 (TMH)<br><br>**Re: Adv. D.I. 49** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOBILEFUSE, LLC'S MOTION FOR A STAY**

**THE ROSNER LAW GROUP LLC**
Frederick B. Rosner (DE #3995)
824 N. Market Street, Suite 810
Wilmington, DE 19801
Telephone: (302) 777-1111
rosner@teamrosner.com

**MEYER, SUOZZI, ENGLISH & KLEIN, P.C.**
Kevin Schlosser, Esq.
Robert F. Regan, Esq.
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, New York 11530-9194
(516) 741-6565
kschlosser@msek.com
rregan@msek.com

Dated: September 1, 2026

*Counsel to Defendant MobileFuse LLC*

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

NATURE AND STAGE OF THE PROCEEDING ........ 3

SUMMARY OF ARGUMENT ........ 5

SUMMARY OF ALLEGATIONS IN ADVERSARY PROCEEDING ........ 5

SUMMARY OF ALLEGATIONS IN DOJ AND SEC PROCEEDINGS ........ 8

ARGUMENT ........ 12

I. LEGAL STANDARD ........ 12

II. THE ADVERSARY PROCEEDING SHOULD BE STAYED PENDING THE RESOLUTION OF THE DOJ PROCEEDING IN THE INTEREST OF JUSTICE ........ 14

1. Similarity of Issues ........ 14
2. Stage of the Criminal Proceeding ........ 15
3. Prejudice to the Plaintiff ........ 16
4. Burden on Defendants ........ 18
5. Interests of the Court ........ 20
6. Public Interest ........ 21

CONCLUSION ........ 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Sec. Litig.*,
No. 02–cv–1781, 2003 WL 22358819 (E.D. Pa. 2003)........................................... *passim*

*Adelphia Communs. Corp. v. Rigas (In re Adelphia Comm. Corp.)*,
293 B.R. 337 (Bankr. S.D.N.Y. 2003)........................................................................12, 17

*Admiral Ins. Co. v. U.S. District Court*,
881 F.2d 1486 (9th Cir.1989) ........................................................................................18

*Bechtel Corp. v. Loc. 215, Laborers' Int'l Union of N. Am., AFL-CIO*,
544 F.2d 1207 (3d Cir. 1976).........................................................................................12

*Cadence Design Sys. v. Anant!, Inc.*,
No. 95–cv–2028, 1997 U.S. Dist. LEXIS 24147 (N.D. Cal. 1997)..................................13, 19

*In re Derivative Litig.*,
No. 06–cv–02964, 2007 WL 1101276 (E.D. Pa. 2007)...................................................17

*In re Julmice*,
458 B.R. 657 (Bankr. E.D.N.Y. 2011)...................................................................13, 16, 20, 21

*In re Kowalski*,
633 B.R. 822 (Bankr. N.D. Ill. 2021) ............................................................................ *passim*

*Landis v. North American Co.*,
299 U.S. 248 (1936).........................................................................................................12

*Louis Berger Grp., Inc. v. State Bank of India*,
802 F. Supp. 2d 482 (S.D.N.Y. 2011).............................................................................21

*Medical Investment Co. v. International Portfolio, Inc.*,
No. 12-3569, 2014 WL 2452193 (E.D. Pa. 2014) .......................................................13, 19, 21

*Peterson v. Matlock*,
No. 11–cv–2594, 2011 WL 5416571 (D.N.J. 2011).......................................................22

*Rad Services, Inc. v. Aetna Cas. and Sur. Co.*,
808 F.2d 271 (3d Cir. 1986)............................................................................................18

*Reyes v. Freeberry*,
141 F. App'x 49 (3d Cir. 2005) .......................................................................................12

*SEC v. Archer*,
No. 16-cv-3505, 2016 WL 4371303 (S.D.N.Y. 2016) ............ 14

*Securities & Exchange Commission v. Desai*,
672 F. App'x 201 (3d Cir. 2016) ............ 18

*State Farm Mutual Automobile Insurance Company v. Beckham-Easley,*
2002 WL 31111766, *3 (E.D. Pa. 2002) ............ 20

*Texaco, Inc. v. Borda*,
383 F.2d 607 (3d Cir. 1967) ............ 18

*Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*,
886 F. Supp. 1134 (S.D.N.Y. 1995) ............ 12, 17, 21

*Tucker v. New York Police Dep't*,
No. 08–cv–2156, 2010 WL 703189 (D.N.J. 2010), *aff'd in part,* 408 Fed. App'x 513 (3d Cir.2010) ............ 16

*U.S. v. Kordel*,
397 U.S. 1 (1970) ............ 12, 13

*United States v. $557,933.89, More or Less in U.S. Funds*,
1998 WL 817651 (E.D.N.Y. 1998) ............ 19

*Volmar Distrib., Inc. v. N.Y. Post Co., Inc.*,
152 F.R.D. 36 (S.D.N.Y. 1993) ............ 17

*Walsh Securities, Inc. v. Cristo Prop. Mgmt. Ltd.*,
7 F.Supp.2d 523 (D.N.J. 1998) ............ *passim*

*In re Worldcom, Inc. Sec. & Erisa Litig.*,
02-cv-3288-DLC, 02-cv-4816-DLC, 2002 WL 31729501 (S.D.N.Y. 2002) ............ 14

**Statutes**

11 U.S.C.§ 1123 ............ 4

**Other Authorities**

Fed. R. Bankr. P. 7012 ............ 22

Fed. R. Bankr. P. 7016 ............ 1

Fed. R. Civ. P. 12 ............ 22

Fed. R. Cr. P. 16 ............ 12

Local Bankr. R. 7012-1 .......................................................................................................................22

## PRELIMINARY STATEMENT

Defendant MobileFuse LLC ("MobileFuse"), by its undersigned counsel, respectfully submits this Memorandum of Law in support of its motion ("Motion"), pursuant to Federal Rule of Bankruptcy Procedure 7016 and the Court's inherent authority, for a stay of this adversary proceeding ("Adversary Proceeding") pending the resolution of the parallel criminal proceeding commenced by the U.S. Department of Justice ("DOJ Proceeding")[1] in the Southern District of New York against the former officers of the Debtor[2] ("Near Insiders") and Kenneth Harlan ("Mr. Harlan"), the former CEO of MobileFuse.

As set forth below, the purported claims against MobileFuse in this Adversary Proceeding arise out of the same facts and circumstances and involve substantially the same issues as the DOJ Proceeding, and are inextricably intertwined with the claims against Mr. Harlan and the other defendants in the DOJ Proceeding. Moreover, based on the purported allegations by plaintiff Drivetrain, LLC ("Plaintiff" or "Drivetrain") in the first Amended Complaint ("FAC"), Mr. Harlan is a central figure with respect to the purported claims against MobileFuse in the Adversary Proceeding. As a result, Mr. Harlan is not only a key witness in this case, but his testimony is critical to formulating MobileFuse's defense to the claims against MobileFuse in this Adversary Proceeding. As confirmed by Mr. Harlan's attorneys, however, until the DOJ Proceeding has been resolved, Mr. Harlan will be invoking his Fifth Amendment right against self-incrimination and will be unavailable to assist MobileFuse in the defense of this case.

---

[1] *USA v. Mathews, et al.*, Docket No. SI 24 Cr. 630, United States District Court, Southern District of New York.

[2] The Debtors in these chapter 11 cases are Near Intelligence, Inc., Near Intelligence LLC, Near North America, Inc., and Near Intelligence Pte. Ltd. (collectively "Debtor" or "Near").

In addition to Mr. Harlan, all of the other key witnesses in this Adversary Proceeding are referenced in the Indictment in the DOJ Proceeding and we anticipate that they will be invoking their Fifth Amendment rights against self-incrimination. Thus, those witnesses will also be unavailable for purposes of discovery until after the DOJ Proceeding has been resolved. For example, Anil Mathews and Rahul Agarwal, two of the "Near Insiders" that, according to the FAC, orchestrated the alleged "roundtripping" scheme that is at the subject of each of these cases, are also criminal defendants in the DOJ Proceeding. Moreover, it is our understanding that Mr. Agarwal has left the country. Even if they were both within the Court's jurisdiction, however, we anticipate that they would assert their Fifth Amendment rights. Furthermore, even though Shobhit Shukla, another of the alleged "Near Insiders," and Val Katayev and Matthew Sessanta, two of the alleged "MobileFuse Insiders," are not named defendants in the DOJ Proceeding, they are still referred to as participants in the alleged "roundtripping" scheme. Indeed, counsel for both Mr. Katayev and Mr. Sessanta have already confirmed to counsel for MobileFuse that their clients will be unavailable to discuss this matter with MobileFuse as a result of the pending, criminal DOJ Proceeding. Accordingly, it appears that none of the key witnesses in this case will be available for purposes of discovery or any other proceedings in this case until after the DOJ Proceeding has been resolved.

Accordingly, in the interest of justice and fairness to MobileFuse and in order to avoid any undue prejudice, MobileFuse respectfully requests that the Court issue an order staying this Adversary Proceeding pending the hearing and determination of the DOJ Proceeding. As Mr. Harlan has requested a speedy trial and his trial has already been set in the DOJ Proceeding for January 19, 2027, there would be no undue prejudice to Plaintiff from the requested stay. Furthermore, the U.S. Department of Justice ("DOJ") has confirmed to counsel for MobileFuse

that the U.S. Attorney's Office for the Southern District of New York supports a stay of this Adversary Proceeding until the conclusion of the DOJ Proceeding, and has previously indicated that it may, if necessary, seek to intervene in this case in order to request such a stay. Indeed, the DOJ has already sought and obtained a stay in a third related case (the "SEC Proceeding"),[3] which was commenced by the U.S. Securities and Exchange Commission ("SEC") in the Southern District of New York against the defendants in the DOJ Proceeding and MobileFuse and which arises out of the same facts and circumstances that are the subject of both the DOJ Proceeding and this case. Thus, by Order dated April 23, 2026 ("DOJ Order"), the United States District Court for the Southern District of New York found that a stay of the SEC Proceeding in its entirety "is in furtherance of the interests of justice and will not prejudice any party" and, therefore, stayed the SEC Proceeding in its entirety until the completion of the DOJ Proceeding. *See SEC v. Anil Mathews, et al.*, Civil Action No. 26-cv-693 (JPC) [Docket No. 21]. A copy of the DOJ Order is annexed hereto as Exhibit D.

In light of all of the above circumstances, MobileFuse respectfully requests, in the interest of justice and out of fairness to MobileFuse, that the Court stay this Adversary Proceeding pending the hearing and determination of the DOJ Proceeding.

## NATURE AND STAGE OF THE PROCEEDING

On December 8, 2023, Near filed a voluntary petition for relief in this Court under Chapter 11 of the United States Bankruptcy Code. (FAC, ¶ 10.)

[3] *SEC v. Mathews, et al.*, Docket No. 26 Civ. 693, United States District Court, Southern District of New York.

On March 13, 2024, Near filed the *Modified Third Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors* [D.I. 336] (the "Plan"). (FAC, ¶ 10.)

On March 15, 2024, the Court confirmed the Plan in its Findings of Fact, Conclusions of Law, and Order Approving Adequacy of Disclosures on a Final Basis and Confirming the *Modified Third Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 346] (the "Confirmation Order"). (FAC, ¶ 10.)

The Confirmation Order appointed the Trustee as the representative of the Debtors' estates pursuant to 11 U.S.C.§ 1123(b)(3)(B) and vested in the Trustee the authority to "investigate[] and, if appropriate, pursu[e]" certain causes of action, including causes of action that previously belonged to Near." (FAC, ¶ 10.).

Thus, pursuant to the Confirmation Order, the Trustee "shall be the representative of the estate" and "shall be the Debtors' successor in interest with respect to the Litigation Trust Assets and all actions, claims, defenses, rights, or interests constituting Litigation Trust Assets." Confirmation Order, ¶ 13.

On September 4, 2025, the Trustee filed the original Complaint. [D.I. 570]. On November 18, 2025, in response to MobileFuse's original motion to dismiss, the Trustee filed the FAC. [Adv. D.I. 24].

On December 16, 2025, MobileFuse filed its motion to dismiss the FAC. [Adv. D.I. 28].

By Order dated June 26, 2026, the Court granted in part and denied in part MobileFuse's motion to dismiss the FAC. [Adv. D.I. 45].

MobileFuse now moves to stay this Adversary Proceeding for the reasons stated below.

**SUMMARY OF ARGUMENT**

As set forth below, this Adversary Proceeding arises out of the same facts and circumstances as the parallel DOJ Proceeding and, as a result, there is a substantial overlap of the issues in these two cases. Furthermore, based on the allegations in the Adversary Proceeding and the DOJ Proceeding, it appears that the key witnesses in this case are likely to invoke their Fifth Amendment rights against self-incrimination and will likely be unavailable for purposes of discovery or other proceedings in this case. In particular, the assistance of Mr. Harlan, who is a key witness with respect to both the DOJ Proceeding and Adversary Proceeding, is essential to MobileFuse's ability to adequately develop its defenses to the claims against MobileFuse and to address the issues in this Adversary Proceeding. Nevertheless, Mr. Harlan, through his attorneys, has confirmed his intent to invoke his Fifth Amendment right against self-incrimination and would not be available to assist MobileFuse while the DOJ Proceeding is pending, thereby severely prejudicing MobileFuse by confounding its ability to develop its defenses and address the issues in this case. Accordingly, in the interest of justice and out of fairness to MobileFuse, it is respectfully submitted that the Court should stay this Adversary Proceeding pending the resolution of the related DOJ Proceeding.

**SUMMARY OF ALLEGATIONS IN ADVERSARY PROCEEDING**

Plaintiff commenced this Adversary Proceeding on September 4, 2025. Pursuant to the November 18, 2025 FAC, a copy of which is submitted herewith as Exhibit A, the Trustee alleges as follows:

According to the FAC, in or about 2020, Near and MobileFuse entered into a "strategic partnership" consisting of a series of agreements (the "Service and Usage Agreements") whereby

(a) MobileFuse, as the customer, would pay a fee to use Near's data products; (b) Near, as the customer, would pay MobileFuse a fee for certain services; and (c) Near Insiders would invest $2 million in MobileFuse in exchange for a 10% ownership interest in MobileFuse. FAC, ¶¶ 26-27. Plaintiff then seeks to disregard the terms of the parties' agreements and asserts in conclusory fashion that any payments by MobileFuse to Near for Near's services were legitimate, but that any payments by Near for services provided by MobileFuse were illegitimate. FAC, ¶¶ 30-31, 44. MobileFuse obviously reserves the right to dispute these allegations, as well as the allegations in the related DOJ and SEC proceedings, and merely summarizes the allegations for purposes of this Motion.

The gravamen of the FAC is that Near entered into an alleged fraudulent "round-tripping" payment scheme with MobileFuse that was "orchestrated by insiders of Near." FAC, ¶ 1. According to the allegations in the FAC, there was a "partnership" between the "Near Insiders" (Anil Mathews, Rahul Agarwal and Shobhit Shukla) and the "MobileFuse Insiders" (Ken Harlan, Val Katayev and Matt Sessanta) whereby they allegedly "concocted a multifaceted scheme" that was "concealed from others at both Near and MobileFuse." FAC, ¶ 4. Pursuant to the allegations in the FAC, Near allegedly made substantial payments to MobileFuse – in an amount determined by the Near Insiders – for services provided by MobileFuse to Near, so that MobileFuse could then turn around and immediately make even greater payments to Near – again, in amounts *determined by the Near Insiders* – for services provided by Near to MobileFuse, resulting in a net payment to Near. FAC, ¶¶ 39-40.

According to the FAC, the Near Insiders' scheme "began to unravel in 2023" due in part to "the Near Insiders' growing fear that, with Near becoming a publicly-traded company in early 2023, there was a larger audience to discover their personal investment in MobileFuse and the Payment Scheme." FAC, ¶ 59. On August 15, 2023, MobileFuse allegedly gave Near written notice that it

was terminating its agreement with Near. FAC, ¶ 60. Thereafter, in or about September 2023, the FAC claims that the parties wound down their relationship and negotiated a settlement of the outstanding debts between Near and MobileFuse. FAC, ¶¶ 64-65. On or about December 8, 2023, Near filed petitions for relief under chapter 11 of the Bankruptcy Code, listing MobileFuse's Scheduled Claim as a nonpriority claim in its Schedule of Assets and Liabilities for Near North America, Inc. [D.I. 120] in the amount of $724,730.42. FAC, ¶ 69.

Throughout the FAC, Plaintiff alleges that Mr. Harlan, as MobileFuse's co-founder and former Chief Executive Officer, was the central figure with respect to the claims against MobileFuse. Indeed, Plaintiff claims that the alleged "scheme" was "concealed from others at both Near and MobileFuse." FAC, ¶ 4, 25-27. Plaintiff alleges that the Near Insiders had multiple conversations with Mr. Harlan, beginning in September 2019, concerning the potential relationship between the two companies that ultimately culminated in the written agreements between Near and MobileFuse. FAC, ¶¶ 25-27. Those communications between the Near Insiders and Mr. Harlan (on behalf of MobileFuse) allegedly continued throughout the relationship between the two companies. *See, e.g.*, FAC ¶ 29. Additionally, based on Plaintiff's allegations, the agreements between Near and MobileFuse that are the subject of this Adversary Proceeding against MobileFuse were signed by Mr. Harlan on behalf of MobileFuse, and Mr. Harlan is also the individual at MobileFuse that ultimately terminated the agreements between Near and MobileFuse. FAC, ¶ 60. Finally, Plaintiff alleges that efforts were made to conceal the alleged "scheme" from "others at … MobileFuse." FAC, ¶ 4.

**SUMMARY OF ALLEGATIONS IN DOJ AND SEC PROCEEDINGS**

Pursuant to the Indictment in the DOJ Proceeding filed on August 6, 2025, a copy of which is submitted herewith as Exhibit B,[4] the DOJ alleges that defendants Mathews and Agarwal (*i.e.*, the Near Insiders) orchestrated a scheme to fraudulently inflate Near's reported revenue by "round-tripping" money through MobileFuse, and that Mr. Harlan, as the founder of MobileFuse, "agreed to facilitate Near's fraudulent inflation of its revenue by exchanging fake invoices along with inflated payments that allowed Near's revenue from MobileFuse's business to appear more than ten times higher than it actually was, while MobileFuse 'netted' out the roundtripped amounts and paid Near only what MobileFuse owed it for services actually rendered." Indictment, ¶ 1. According to the Indictment, "Near was recognizing fake revenue that was based on these round-tripped amounts that originated at Near, rather than representing money MobileFuse legitimately owed Near for business services." Indictment, ¶ 1.

Similar to the FAC in this case, according to the Indictment, the relationship between Near and MobileFuse first began in or around late 2019, when the Near Insiders began discussing with Mr. Harlan a potential acquisition of MobileFuse by Near. Indictment, ¶ 18. Thereafter, the Near Insiders exchanged emails with Mr. Harlan allegedly "to discuss how the round-tripped transactions would work" and the payment of a $1.25 million invoice between MobileFuse and Near, "even though the defendants knew Near had not provided $1.25 million in goods or services to MobileFuse." Indictment, ¶ 20. Instead, according to the Indictment, the net difference between the amount paid by Near to MobileFuse and the amount paid by MobileFuse to Near represented "the amount MobileFuse legitimately owed to Near for actual services rendered." Indictment, ¶

[4] The indictment is a matter of public record. *See* indictment in *United States v. Mathews, et al.*, SI 24 Cr. 630 (SDNY) ("Indictment"), available here: https://www.justice.gov/usao-sdny/media/1410506/dl?inline.

23. According to the Indictment, although Near did not appropriately account for the revenue from the transactions with MobileFuse and recorded "increased revenue" on its books, Mr. Harlan and MobileFuse "netted" the amount Near paid against the amount it paid to Near and appropriately recorded the difference on its books. *See* Indictment, ¶ 27. Thus, the Indictment does not allege that Mr. Harlan or MobileFuse improperly accounted for any of the transactions between Near and MobileFuse. The Indictment does allege, however, that Mr. Harlan sought to conceal the alleged "scheme" from MobileFuse employees. Indictment, ¶ 28.

The Indictment further alleges that the Near Insiders and Mr. Harlan both knew that "Near's recognition of the fraudulently inflated revenue from the MobileFuse round-tripped transactions caused Near's revenue to be overstated on its financial statements, including its audited financial statements from both before and after Near became a public company." Indictment, ¶ 24. According to the Indictment, Mr. Harlan allegedly attempted to assist the Near Insiders in concealing the alleged round-tripping scheme from Near's independent auditors by signing or causing MobileFuse to sign audit confirmations that falsely confirmed that MobileFuse owed the amounts listed on Near's invoices to Near. Indictment, ¶¶ 29-30. Although not named as defendants, throughout the Indictment, Mr. Katayev is referred to as "MobileFuse Executive-2" and the co-founder of MobileFuse, Mr. Sessanta is referred to as "MobileFuse Executive-3" and the Director of Finance, and Mr. Shukla is referred to as "Near Executive-3." Indictment, ¶¶ 4, 7.

Similar to the Indictment, pursuant to the January 27, 2026 Complaint in the SEC Proceeding, a copy of which is submitted herewith as Exhibit C, the SEC alleges that, from May 2021 to September 2023, the defendants engaged in a "fraudulent round-trip accounting scheme" to "overstate Near's reported revenue." SEC Complaint, ¶ 2. According to the SEC, defendants Mathews and Agarwal (*i.e.*, the Near Insiders) committed a fraud to improperly inflate Near's

revenue in violation of the federal securities law, and that Mathews and Agarwal were aided and abetted by MobileFuse, and its Chief Executive Officer at the time, Mr. Harlan. SEC Complaint, ¶ 1. The SEC alleges that the fraudulent inflation of Near's revenue was designed, at least in part, to make Near more attractive as a candidate for a Special Purpose Acquisition Company ("SPAC") to take Near public. SEC Complaint, ¶ 4.

According to the SEC Complaint, in 2021, Near and MobileFuse entered into "mutual contracts, one providing MobileFuse access to Near's data platform, and the other providing Near access to MobileFuse's data platform," but that "[t]he companies exchanged minimal actual services under these mutual contracts." SEC Complaint, ¶ 49-50. The SEC then alleges that the net difference between the invoices from Near to MobileFuse and the invoices from MobileFuse to Near reflected "the actual costs MobileFuse incurred and the actual payment due from MobileFuse to Near," *i.e.*, "the actual amount due for the data access that MobileFuse purchased from Near, substantially less than [the amount] that Near listed on its invoice to MobileFuse." SEC Complaint, ¶ 64. Similar to the allegations by the DOJ, the SEC alleges that MobileFuse, at the direction of Mr. Harlan, provided false audit confirmation letters to Near's independent auditors and, thereby, falsely confirmed the legitimacy of Near's invoices and, in turn, that MobileFuse owed those sums to Near. SEC Complaint, ¶¶ 139-151.

Like the allegations by both Plaintiff and the DOJ, the SEC alleges that Mr. Harlan was the primary individual at MobileFuse with knowledge concerning their claims against MobileFuse and that any knowledge of other individuals at MobileFuse concerning those claims was, at best, limited. *See, e.g.*, SEC Complaint, ¶ 81. The SEC alleges that Mr. Harlan aided and abetted the Near Insiders in their fraudulent round-trip scheme to inflate Near's revenue, and that such conduct should be imputed to MobileFuse. SEC Complaint, ¶ 203. Also like the DOJ and Plaintiff, the

SEC alleges that Mr. Harlan "took steps to conceal the round-trip transactions from others within MobileFuse" and "limited knowledge of the round-trip transactions within MobileFuse." SEC Complaint, ¶¶ 81, 204. Although not named in the SEC Proceeding, throughout the SEC Complaint, Mr. Katayev is referred to as "MobileFuse's co-majority owner" and Mr. Sessanta is referred to as "MobileFuse Finance Employee." SEC Complaint, ¶¶ 62, 79.

It should be noted that Mr. Harlan has asserted his innocence in the DOJ Proceeding and, through his counsel, is zealously defending the allegations in the Indictment. *See United States v. Mathews, et al.*, No. 24-CR-630, United States District Court, Southern District of New York [Docket No. 46] (Motion to Sever). Similarly, MobileFuse reserves its right to dispute the above allegations and is simply summarizing those allegations for purposes of this Motion. Based on those allegations, however, it is clear that the claims alleged in the FAC arise out of the same facts and circumstances alleged in both the Indictment and the SEC Complaint, and that there is a substantial overlap of the issues in the Adversary Proceeding and the DOJ and SEC Proceedings. Furthermore, the allegations in each of those cases assert that Mr. Harlan was a key witness with respect to the claims against MobileFuse and allegedly concealed his conduct from others at MobileFuse. As a result, Mr. Harlan is a critical source of information for purposes of developing a defense to the claims against MobileFuse. As set forth below, because Mr. Harlan will be invoking his Fifth Amendment right against self-incrimination while the DOJ Proceeding is pending against him, he will be unavailable to assist MobileFuse in developing its defense to the claims in the Adversary Proceeding. Indeed, based on the purported allegations in both the Adversary Proceeding and the Indictment, it is likely that all of the other key witnesses in this case will be invoking their Fifth Amendment rights against self-incrimination and will be unavailable for purposes of discovery and any other proceedings in this matter. Accordingly, in the interest of

justice and in fairness to MobileFuse, it is respectfully submitted that the Adversary Proceeding should be stayed pending the resolution of the DOJ Proceeding. The District Court for the Southern District of New York has already issued a stay of the related SEC Proceeding pending the resolution of the DOJ Proceeding and similar stay should now be issued in this case.

## ARGUMENT

### I. LEGAL STANDARD

A bankruptcy court has broad discretion and inherent authority to stay adversary proceedings pending the resolution of another action, such as when a parallel criminal proceeding is pending. *See Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936)("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with the economy of time and effort for itself, for counsel, and for litigants."); *Bechtel Corp. v. Loc. 215, Laborers' Int'l Union of N. Am., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976) (same). Thus, a civil case may be stayed "pending resolution of a related criminal case." *Reyes v. Freeberry*, 141 F. App'x 49, 51 (3d Cir. 2005). "Courts are afforded this discretion because the denial of a stay could impair a party's Fifth Amendment privilege against self-incrimination, extend criminal discovery beyond the limits set forth in Federal Rule of Criminal Procedure 16(b), expose the defense's theory to the prosecution in advance of trial, or otherwise prejudice the criminal case." *Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1138 (S.D.N.Y. 1995). *See also Adelphia Communs. Corp. v. Rigas (In re Adelphia Comm. Corp.)*, 293 B.R. 337, 359 (Bankr. S.D.N.Y. 2003) (granting stay where defendants faced a "Hobson's choice of waiving their Fifth Amendment Rights, or suffering a $500 million default judgment" while plaintiff "would suffer no more than … delays").

Moreover, the Supreme Court recognized in *United States v. Kordel* that, where no one can respond to discovery requests addressed to a corporation "without subjecting himself to a 'real and

appreciable' risk of self-incrimination," the appropriate remedy is "a protective order under Rule 30(b), postponing civil discovery until termination of the criminal action." *U.S. v. Kordel*, 397 U.S. 1, 8-9 (1970). Accordingly, courts have discretionary power to stay civil proceedings when the "interests of justice" so require. *Id.* at 12 n. 27. Relying on the Supreme Court's decision in *Kordel*, courts within the Third Circuit have held that a corporate defendant in a civil case may be a beneficiary of a corporate employee's personal invocation of the Fifth Amendment privilege when that employee is the only individual who can speak on the corporate defendant's behalf and, therefore, the failure to stay the civil case not only subjects the corporate employee to "real and appreciable risk of self-incrimination," but also may impair the corporate defendant's ability to defend itself in the civil case. *Medical Investment Co. v. International Portfolio, Inc.*, No. 12-3569, 2014 WL 2452193 *3 (E.D. Pa. 2014) (corporate defendant in civil action entitled to stay based on criminal indictment of its shareholder and president). *See also Cadence Design Sys. v. Anant!, Inc.,* No. 95–cv–2028, 1997 U.S. Dist. LEXIS 24147 (N.D.Cal. 1997) ("[C]orporate defendants are entitled to stay a civil action where a parallel criminal proceeding prejudices the corporation's right to defend itself.").

In deciding whether to stay a civil case pending the resolution of a related criminal case, courts generally consider the following factors: (1) the extent to which the issues in the civil and criminal cases overlap; (2) the status of the criminal proceedings, including whether any defendants have been indicted; (3) the plaintiff's interests in expeditious civil proceedings weighed against the prejudice to the plaintiff caused by the delay; (4) the burden on the defendants; (5) the interests of the court; and (6) the public interest. *See Walsh Securities, Inc. v. Cristo Prop. Mgmt. Ltd.,* 7 F.Supp.2d 523, 526-27 (D.N.J.1998). *See also In re Kowalski*, 633 B.R. 822, 827 (Bankr.

N.D. Ill. 2021); *In re Julmice*, 458 B.R. 657, 661-62 (Bankr. E.D.N.Y. 2011); *In re Adelphia Commc'ns Sec. Litig.,* No. 02–cv–1781, 2003 WL 22358819, *3 (E.D. Pa. 2003).

As set forth below, consideration of the above factors in the present case weighs heavily in favor of granting a stay of this Adversary proceeding pending the resolution of the DOJ Proceeding.

## II. THE ADVERSARY PROCEEDING SHOULD BE STAYED PENDING THE RESOLUTION OF THE DOJ PROCEEDING IN THE INTEREST OF JUSTICE

### 1. Similarity of Issues

The similarity of the issues underlying the civil and criminal actions is considered the most important threshold issue in determining whether or not to grant a stay. *Walsh Securities,* 7 F.Supp.2d at 527. When the issues in the civil and criminal cases overlap significantly, this factor weighs heavily in favor of a stay. *In re Kowalski*, 633 B.R. at 827. This is because the civil case may undermine the Fifth Amendment privilege against self-incrimination by expanding rights of criminal discovery or by disclosing the basis for a defense to the prosecution before trial. *In re Kowalski*, 633 B.R. at 827 (granting a stay where the Fifth Amendment rights of a non-party witness were implicated). Thus, courts have consistently recognized that the overlap of alleged conduct between a criminal and civil case significantly weighs in favor of granting a stay in the parallel civil proceeding. *See, e.g., SEC v. Archer*, No. 16-cv-3505, 2016 WL 4371303, *2 (S.D.N.Y. 2016) (staying discovery in parallel SEC action where "[t]he underlying conduct alleged in this action is the same as that alleged in the Indictment"). *See also In re Worldcom, Inc. Sec. & Erisa Litig.*, Nos. 02-civ-3288-DLC, 02-civ-4816-DLC, 2002 WL 31729501, *9 (S.D.N.Y. 2002) (finding a stay of the civil proceeding compelling "in light of the clear overlap between the criminal and civil cases").

In the present case, there is clearly a substantial overlap between and among the Adversary Proceeding, the DOJ Proceeding or the SEC Proceeding, which – as set forth above – all arise out of the same alleged facts and circumstances and are based on the same alleged "round-tripping" scheme. Indeed, the Adversary Proceeding, the DOJ Proceeding and the SEC Proceeding are all based on the same alleged financial transactions between Near and MobileFuse. As a result, there clearly are significant overlapping issues that are integral to both the criminal and civil proceedings. "Accordingly, this factor weighs heavily in favor of granting the stay." *In re Adelphia Communications Securities Litigation*, 2003 WL 22358819 at *3 (granting stay of adversary proceeding pending determination of criminal proceeding). *See also In re Kowalski*, 633 B.R. at 827-29 (granting stay where adversary proceeding and criminal matter both centered around the same transactions).

**2. Stage of the Criminal Proceeding**

The stage of the criminal proceeding is also an important factor in determining whether to grant a stay. "Where a parallel criminal case is pending at the same time a civil matter is proceeding, a stay should be entered." *In re Kowalski*, 633 B.R. at 828. "Even where a witness in the civil proceeding is a defendant in the parallel criminal case, courts have reasoned that staying the civil case until the criminal proceeding concludes may be appropriate where any delay in the civil proceeding would be minimal and the resolution of the criminal matter may affect the inquiry into issues in the civil case." *Id.* (staying suit against employer where employer intended to call employee as witness while employee was defendant in related criminal case).

Thus, "[i]f criminal indictments are returned against the civil defendants, then a court should strongly consider staying the civil proceedings until the related criminal proceedings are resolved." *In re Adelphia*, 2003 WL 22358819 at *3. Individuals subject to criminal indictment

face a significant risk of self-incrimination during the civil discovery process. *Walsh Securities,* 7 F.Supp.2d at 527. Moreover, the indicted defendants risk exposing their criminal defense strategy during civil discovery. *Id.* Additionally, the burden of delay on the civil litigants is minimal because the Speedy Trial Act requires prompt resolution of the related criminal proceedings. *Id.*

In this case, the criminal defendants in the DOJ Proceeding have already been indicted, Mr. Harlan has requested a speedy trial, and Mr. Harlan's criminal trial is scheduled to go forward in January 2027. Thus, the criminal case is clearly "moving closer to resolution." *See In re Julmice*, 458 B.R. at 663-64 (stay granted even in the absence of a trial date in criminal case where movant's counsel represented, based on conversations with criminal counsel, that case would likely be declared "trial-ready" at next conference). Under these circumstances, any burden of delay on Plaintiff is minimal. The burden, however, on Mr. Harlan's Fifth Amendment rights and the risk that his criminal defense strategies will be exposed in the absence of a stay are significant. Likewise, the burden on MobileFuse in attempting to defend the claims in this Adversary Proceeding without the crucial assistance of Mr. Harlan or the testimony of other key witnesses – all of whom understandably would elect not to testify in this civil case until after the criminal DOJ Proceeding is resolved – is clearly substantial. Under the circumstances in this case, denial of the requested stay would be manifestly unfair to MobileFuse. Thus, this factor weighs strongly in favor of staying the Adversary Proceeding "pending resolution of the related criminal proceedings." *In re Adelphia*, 2003 WL 22358819 at *4; *see also In re Kowalski*, 633 B.R. at 828-29 (same).

**3. Prejudice to the Plaintiff**

In evaluating the burden on the plaintiff from the stay, the plaintiff is required to establish more than simply a delay in its right to expeditiously pursue its claim. "The mere fact that

additional time will pass . . . does not alone establish prejudice to the [p]laintiff[s].” *Tucker v. New York Police Dep't,* No. 08–cv–2156, 2010 WL 703189, *7 (D.N.J. 2010), *aff'd in part,* 408 Fed. App'x 513 (3d Cir.2010). Instead, the plaintiff must demonstrate a particularly unique injury, “such as the dissipation of assets or an attempt to gain an unfair advantage from the stay.” *In re Derivative Litig.,* No. 06–cv–02964, 2007 WL 1101276, *2 (E.D. Pa. 2007); *Walsh Securities,* 7 F.Supp.2d at 528.

In this case, Plaintiff cannot establish any such unique injury, particularly in light of the fact that Mr. Harlan’s trial is proceeding in January 2027. *See, e.g.*, *Adelphia*, 2003 WL 22358819 at *4 (in granting stay, court found that “Plaintiffs have not shown any prejudice other than delay in pursuing their suits, which is insufficient to support vacating the stay.”). Instead, the burden on the Fifth Amendment rights of Mr. Harlan, and any of MobileFuse’s executives or employees whose testimony may be sought, outweighs Plaintiff’s interests. *See Trustees of Plumbers and Pipefitters Nat’l Pension Fund*, 886 F.Supp. at 1140 (finding that plaintiff’s “legitimate interest in the expeditious resolution of their case” is trumped by prejudice defendants would face in “choosing between waiving their Fifth Amendment rights or effectively forfeiting the civil case”); *In re Adelphia*, 293 B.R. at 359 (delay of discovery does not outweigh the Fifth Amendment concerns of defendants); *Volmar Distrib., Inc. v. N.Y. Post Co., Inc.*, 152 F.R.D. 36, 40 (S.D.N.Y. 1993) (granting stay in order to preserve defendants’ Fifth Amendment rights and stating that plaintiff’s argument that a discovery postponement will lead to evidence being “lost due to ‘incarceration, death, or witness intimidation[] ’. . . is simply insufficient to overcome the real probability of substantial prejudice to [the defendants]”).

Accordingly, this factor also weighs in favor of granting the requested stay. *In re Adelphia*, 2003 WL 22358819 at *4 (“because the Court finds that Plaintiffs are not prejudiced by the delay

resulting from the stay, this factor militates in favor of the stay"). *See also In re Kowalski*, 633 B.R. at 829 (court found that Trustee's interest in prompt resolution of adversary proceeding did not justify jeopardizing criminal defendants' assertion of rights in criminal case).

**4. Burden on Defendants**

Courts also consider the burden that denial of a stay would have on the defendants to a civil proceeding. As indicated above, defendants subject to a criminal indictment are forced to choose between waiving their Fifth Amendment rights during civil discovery or asserting the privilege and losing the civil case. *Walsh Securities,* 7 F.Supp.2d at 528. Courts will consider this conflict in determining whether to stay a civil case. Where denial of the stay would "confound" the defendants' discovery efforts and its defense of the civil action, courts have concluded that the burden on the defendants weighs in favor of granting a stay. *See In re Kowalski*, 633 B.R. at 829.

Moreover, the Third Circuit has confirmed that courts have discretion to stay civil discovery pending the resolution of a criminal case where a person from whom information is sought in a civil proceeding may face criminal prosecution. *Rad Services, Inc. v. Aetna Cas. and Sur. Co.*, 808 F.2d 271, 279, n. 3 (3rd Cir. 1986); *Securities & Exchange Commission v. Desai*, 672 F. App'x 201, 205 (3d Cir. 2016) (court acted within its discretion in staying civil action until after criminal proceedings against owner of company concluded where there was substantial overlap between the civil and criminal proceedings). *See also Texaco, Inc. v. Borda*, 383 F.2d 607, 608-09 (3d Cir. 1967) (affirming stay of civil proceeding against corporate defendant pending determination of related criminal proceeding, even though corporate defendant itself was not indicted in the criminal case). Where an individual defendant indicted in a criminal case is an employee of a corporate defendant in a civil action, the corporate defendant in the civil case "may be the unintended beneficiary of a corporate employee's personal invocation of the [F]ifth

[A]mendment privilege." *Admiral Ins. Co. v. U.S. District Court,* 881 F.2d 1486, 1495 n. 8 (9th Cir. 1989). In such situations, the failure to stay the civil case not only subjects the corporate employee to "real and appreciable risk of self-incrimination," but also may impair the corporate defendant's ability to defend itself in the civil case. *Medical Investment Co.,* 2014 WL 2452193 at *4 (corporate defendant in civil action entitled to stay based on criminal indictment of its shareholder and president). *See also Cadence Design Sys.*, 1997 U.S. Dist. LEXIS 24147 ("[C]orporate defendants are entitled to stay a civil action where a parallel criminal proceeding prejudices the corporation's right to defend itself.").

In this case, the denial of a stay would impose a significant burden on MobileFuse. Clearly, Mr. Harlan is a central figure in the Adversary Proceeding. He is also already under criminal indictment in the DOJ Proceeding, which arises out of the same facts and circumstances and involves the same issues as the Adversary Proceeding. Thus, he faces a substantial risk of self-incrimination or the disclosure of his criminal defense strategy and appropriately is preserving and maintaining his Fifth Amendment rights. As indicated above, in light of the allegations in the Adversary Proceeding and the DOJ Proceeding, the key witnesses in this case are likely to invoke their Fifth Amendment rights against self-incrimination and, as a result, will likely be unavailable for purposes of discovery.

Moreover, because of the significant overlap of issues in the Adversary Proceeding and the criminal DOJ Proceeding, MobileFuse is also legitimately concerned that discovery may implicate the Fifth Amendment rights of MobileFuse's other officers or employees. As indicated above, individuals should not "be confronted with the Hobson's choice of answering the complaint and the Government interrogatories, thereby waiving [their] Fifth Amendment right not to incriminate [themselves] … or refusing under the Fifth Amendment to answer the complaint and

interrogatories, in which case [their] property [would] be forfeited." *United States v. $557,933.89, More or Less in U.S. Funds*, 1998 WL 817651, *9-10 (E.D.N.Y. 1998). Thus, courts have repeatedly held that a stay of civil proceedings should be granted in situations similar to this, where the civil and criminal proceedings involve the same subject matter. *See In re Julmice*, 458 B.R. at 663 (granting stay of adversary proceeding where issues were "sufficiently similar" to the criminal proceeding).

Furthermore, if the requested stay is not imposed, the key witnesses in this Adversary Proceeding, including Mr. Harlan, may be subpoenaed. Because Mr. Harlan and the other key witnesses are likely to invoke their Fifth Amendment rights against self-incrimination, the Court would then be forced to determine whether that privilege applies with respect to each question asked at a deposition. At the same time, MobileFuse would be severely compromised in its defense of this Adversary Proceeding as a result of its lack of access to information from Mr. Harlan and the other key witnesses. As a result, the denial of the requested stay would likely confound MobileFuse's efforts to develop its defense, and MobileFuse would not be able to adequately defend itself. *See Adelphia*, 2003 WL 22358819 at *5, *citing Volmar Distribs., Inc.* 152 F.R.D. at 41 (granting stay of civil proceeding where unindicted civil defendants "may not be able to adequately defend themselves" where indicted defendant invokes right against self-incrimination). Accordingly, this factor weighs in favor of staying the Adversary Proceeding. *Id.*

**5. Interests of the Court**

The Court clearly has an interest in efficiently managing its caseload. *State Farm Mutual Automobile Insurance Company v. Beckham-Easley,* 2002 WL 31111766, *3 (E.D. Pa. 2002). In this case, granting the stay would promote judicial economy.

First, without a stay and until the DOJ Proceeding is resolved, Mr. Harlan and the other key witnesses will likely invoke their Fifth Amendment rights, forcing the Court to repeatedly decide numerous privilege issues throughout the course of discovery in this case. In contrast, if the Adversary Proceeding is stayed until the conclusion of the criminal proceedings, such rulings will likely no longer be necessary. *Walsh Securities,* 7 F.Supp.2d at 528-29. Moreover, a determination in the DOJ Proceeding may resolve certain issues in the Adversary Proceeding, thereby eliminating the need to litigate some issues in the Adversary Proceeding. *See Medical Investment Co.*, 2014 WL 2452193 at *4 ("A stay pending resolution of the criminal case is likely to further the latter goal by reducing the risk of duplication of effort, increasing the potential for settlement, and simplifying the issues raised in this civil litigation.") Thus, resolution of the criminal action could reduce or simplify discovery in this Adversary Proceeding and avoid the wasteful duplication of resources. *In re Julmice*, 458 B.R. at 664-65. *See also Louis Berger Grp., Inc. v. State Bank of India*, 802 F.Supp.2d 482, 490 (S.D.N.Y. 2011) ("Stays are particularly appropriate where they promote judicial economy, avoidance of confusion and possible inconsistent results.").

Based on the foregoing, staying the Adversary Proceeding preserves judicial resources and would streamline some of the complexities of the Adversary proceeding. As a result, this factor weighs in favor of staying the Adversary Proceeding.

**6. Public Interest**

The public interest is not harmed by staying the Adversary Proceeding. While allowing the Adversary Proceeding to proceed may promote the interests of the specific creditors of the Debtor, the related criminal proceeding serves to advance those same interests of creditors more broadly and, indeed, for the general public. "Because of the overlapping issues in the criminal and civil

cases, the criminal prosecution will serve to advance the public interests at stake here." *Trustees of Plumbers and Pipefitters Nat'l Pension Fund,* 886 F.Supp. at 1140. Further, granting the stay will advance the public interest by "allowing the underlying criminal matter to come to a complete, unimpeded conclusion." *Peterson v. Matlock,* No. 11–cv–2594, 2011 WL 5416571, *5 (D.N.J. 2011). Accordingly, the public interest may be served by staying the Adversary Proceeding pending resolution of the DOJ Proceedings. As a result, this factor militates in favor of staying the Adversary Proceeding.

Based on the foregoing, the factors listed above, on balance, support a stay of the Adversary Proceeding pending resolution of the DOJ Proceedings. While the stay may cause the Plaintiff some inconvenience, any alleged prejudice to Plaintiff is strongly outweighed by the other factors, which overwhelmingly support the stay.

## CONCLUSION

As set forth above, because the issues in this Adversary Proceeding and the parallel DOJ Proceeding substantially overlap and MobileFuse would be severely prejudiced if it were forced to proceed with the Adversary Proceeding while the criminal case is still pending, the requested stay of the Adversary proceeding should be granted, and MobileFuse should be granted such other and further relief as the Court deems appropriate.

Dated: September 1, 2026

**THE ROSNER LAW GROUP LLC**

*/s/ Frederick B. Rosner*
Frederick B. Rosner (DE #3995)
824 Market Street, Suite 810
Wilmington, Delaware 19801
Telephone: (302) 777-1111
rosner@teamrosner.com

**MEYER, SUOZZI, ENGLISH & KLEIN, P.C.**
Kevin Schlosser, Esq.
Robert F. Regan, Esq.
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, New York 11530-9194
(516) 741-6565
kschlosser@msek.com
rregan@msek.com

*Counsel to the Defendant MobileFuse, LLC*